EMERGENCY PETITION - HEALTH AND SAFETY - REQUEST EXPEDITED PROCESS

William Burke #295954
Name and Prisoner/Booking Number

ASPC-Kingman/Huachuca Unit
Place of Confinement

P.O. Box 6639
Mailing Address

Kingman, AZ 86402
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

✓ FILED ___ LODGED
___ RECEIVED ___ COPY
JUL 0 1 2020
CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY ___ DEPUTY

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

William Burke,
(Full Name of Plaintiff)

Plaintiff,

v.

(1) David Shinn, et al.,
(Full Name of Defendant)

(2) The GEO Group, Inc.,

(3) J/J DOE (1-15),

(4) Trinity Food Service,

Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-20-8160-PCT-DWL-ESW
(To be supplied by the Clerk)

**CIVIL RIGHTS COMPLAINT BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).
   ☐ Other: ___.

2. Institution/city where violation occurred: ASPC-Kingman/Huachuca Unit - Kingman, AZ.



550/555

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING TO FEDERAL AND/OR LOCAL RULES AND PRACTICES AND IS SUBJECT TO REJECTION BY THE COURT.
REFERENCE CIVL
(Rule Number/Section)

## B. DEFENDANTS

1. Name of first Defendant: David Shinn. The first Defendant is employed as: ADOCRR - Director (Position and Title) at AZ Prison System (Institution).

2. Name of second Defendant: THE GEO Group, INC. The second Defendant is employed as: as: Private Prison / Medical (Position and Title) at Huachuca Unit / World Wide (Institution).

3. Name of third Defendant: J/J Doe (1-15). The third Defendant is employed as: "John / Jane Doe" GEO Staff (unnamed) (Position and Title) at Huachuca Unit (Institution).

4. Name of fourth Defendant: Trinity Food Service The fourth Defendant is employed as: Contract Food Provider (Position and Title) at Huachuca - World-Wide (Institution).

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner? ☐ Yes ☑ No

2. If yes, how many lawsuits have you filed? 0. Describe the previous lawsuits:

a. First prior lawsuit: N/A
   1. Parties: ______ v. ______
   2. Court and case number: ______.
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ______.

b. Second prior lawsuit:
   1. Parties: ______ v. ______
   2. Court and case number: ______.
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ______.

c. Third prior lawsuit:
   1. Parties: ______ v. ______
   2. Court and case number: ______.
   3. Result: (Was the case dismissed? Was it appealed? Is it still pending?) ______.

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

CLASS ACTION
RULE 23

## D. CAUSE OF ACTION

### COUNT I

1. State the constitutional or other federal civil right that was violated: 42 U.S.C. §§ 1320d et seq. (HIPAA).

2. **Count I.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
   - ☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
   - ☐ Excessive force by an officer ☐ Threat to safety ☑ Other: PRIVACY (MEDICAL).

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count I. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

ADOCRR DEPARTMENT ORDER 709 (pg 7) allows a guard to "verify" an inmates particular medication use if he is unable to produce a urine specimen. If an inmate is on a "psycho-tropic" the guard can use that as a mitigating factor in a disciplinary report. These guards don't have the medical training to pop a ZIT! How would they know what a psychotropic med is or how to identify it or its common side effects? Not to mention there are other medications which cause urine hesitency. The guards do not ask permission to explore an inmates medical records and it certainly doesn't qualify as "treatment" – the sole purpose is to gather information for disciplinary purposes. Maybe a better way is to have medical establish a list of inmates who have issues with production and allow for an alternative collection technique --- I don't trust guards with my private medical info because they start rumors. This policy comes from Director of ADOCRR, DAVID SHINN and furthered by The GEO Group Inc.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

PRIVACY RIGHTS VIOLATED. GUARDS SPREAD RUMORS TO OTHER INMATES ABOUT MEDICATION USE. INMATES TRY TO PRESSURE SOME TO SELL THE "GOOD PILLS" OR YOU MIGHT BE OSTRACIZED FOR A CERTAIN MEDICAL CONDITION.

5. **Administrative Remedies:**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Count I? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Count I to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ______________________.

CLASS ACTION
RULE 23

## COUNT II

1. State the constitutional or other federal civil right that was violated: 42 U.S.C. § 12101 et Seq. The Federal ADA / Discipline Proceedings (14th Amendment).

2. **Count II.** Identify the issue involved. Check **only one**. State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☐ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☑ Other: Disability Rights.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

The Prison system qualifies as a "public entity" Under Title II of the ADA. The ADA Amendments Act of 2008 broadened the meaning of terms and now includes "bladder" as a "Major bodily function." A "reasonable accomadation" to a prison "rules, policies, or practices" for drug detection would be to offer a blood test. Yes, it's that SIMPLE! Instead myself and others with bladder issues receive a "major ticket" for "refusal." We then get put on a "TARGETED TESTING" list, which means more frequent UA's --- and more "tickets". Personally, I have been written up twice for "REFUSAL". I have lost over 90 DAYS OF GOOD TIME, lost privileges, e.g. visits, TV, Store etc. had a reduction in my phase, and increased my classification score. If I keep "refusing" they could actually move me to a level 4 lockdown yard (which can be a lot more violent than a 3 yard. I don't get "tickets" for anything else and am very respectful. I feel discriminated against because of my disability. Now I have a tainted prison file that will be on my permanent record for my P.O. to see--- Even though I'm otherwise a model prisoner. David Shinn created these policies.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

A huge "liberty" issue - e.g. loss of good time and unjustified increased classification level with threat of lockdown which is harsh / atypical --- Plus I got fired!

5. **Administrative Remedies.**

a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No

b. Did you submit a request for administrative relief on Count II? ☑ Yes ☐ No

c. Did you appeal your request for relief on Count II to the highest level? ☑ Yes ☐ No

d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ______________________________.

INDIVIDUAL CLAIM (IN PART)
&
CLASS-ACTION (IN PART)
RULE 23

## COUNT III

1. State the constitutional or other federal civil right that was violated: 8th Amendment - U.S. Constitution (Estelle v. Gamble) --- Totality of Circumstances Claim

2. **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
   - ☐ Basic necessities
   - ☐ Mail
   - ☐ Access to the court
   - ☑ Medical care
   - ☐ Disciplinary proceedings
   - ☐ Property
   - ☐ Exercise of religion
   - ☐ Retaliation
   - ☐ Excessive force by an officer
   - ☐ Threat to safety
   - ☐ Other: ______

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.
I've been in ADOCRR for 6 years. Medical has always been substandard but it got really bad when GEO took over medical at the beginning of 2020. They cut everyone off of gabapentin and tramadol for our pain. I broke my back 31 years ago and need pain management. Some people are even worse off than me. GEO does not provide a substitute for pain control. They also took away the heating pad and "TENS" for therapy. And good luck getting an outside specialist like PT for my back, a urologist for my catheter or a radiologist for an ultrasound for my diverticulitis. Any-one looking for an outside specialist is screwed. The only logical reason is so they can save a buck! They won't give me a back brace to help with mobility or provide a medical hat/sun screen to prevent burns, heat exhaustion, or cancer. They are all about money, money, money! Trinity won't even give me a special diet for my potentially fatal food allergy. I'm in alot of pain and the defendants refuse to help me. I blame people at the top like David Shinn and the CEO's of GEO and Trinity - It can't be anyone else.

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).
Severe back pain, limited mobility, abdominal cramps, burned skin, muscle spasms, headaches etc....

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☑ Yes ☐ No
   b. Did you submit a request for administrative relief on Count III? ☑ Yes ☐ No
   c. Did you appeal your request for relief on Count III to the highest level? ☑ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. ______

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

## E. REQUEST FOR RELIEF

State the relief you are seeking:
Compensatory and punitive damages on Count 3 (individual) in an amount to be determined by this court. Standardized Awards for Class members, A TRO/Preliminary Injunction, Appointment of counsel, all costs associated with this suit, a jury trial on all triable issues, and any other relief this court deems just, fair, and equitable... to include expungment of disciplinary file. I also want my job back right away so I can pay my filing fee and get medications that I need.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on 7/4/20
DATE

William C. Burke IV
SIGNATURE OF PLAINTIFF

N/A
(Name and title of paralegal, legal assistant, or other person who helped prepare this complaint)

(Signature of attorney, if any)

(Attorney's address & telephone number)

### ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form. If you need more space, you may attach no more than fifteen additional pages. But the form must be completely filled in to the extent applicable. If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

CORRECTIONS ADC

**ARIZONA DEPARTMENT OF CORRECTIONS**

**Appeal of Disciplinary Charge**

*Please **PRINT** or **TYPE** all information*

**Case Number** ____________

| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | INSTITUTION/UNIT |
|---|---|---|
| Burke, William | 295954 | Kingman / Huachuca |

I hereby appeal the finding of the:

☐ Coordinator of Discipline (Minor) ☑ Disciplinary Hearing Officer (Major) ☑ Step I ☐ Step II

Regarding the finding guilt on Group B Number 38b violation.

Reason(s) for appeal: *(Must identify category and describe bases for appeal.)*

☑ Due Process Requirement

Incorporated by reference from inmates "Legal Argument" and Memorandum of Law directed to the appeals officer --- see also letters to Warden Wrigsley, Department of Justice, and ADOCRR (ADA monitor / support Services), All forms sent to destinations on or about 6/20/20 (delivered by Ms. Fleming - C/O III)

☑ Adequacy of Proof

See above --- inmate will sign a waiver of release of medical records so the Department can "verify" the medical claim of "urine hesitency". Also, inmate has had a valid "SNO" for this issue for the past 4 years

☑ Severity of Penalty

See above --- of particular interest is the "prayer for relief!" Please respond if I can assist in any way to a satisfactory resolution.

| INMATE SIGNATURE | DATE *(mm/dd/yyyy)* | TIME |
|---|---|---|
| William C. Burke III | 6/23/20 | |

NAME OF EMPLOYEE RECEIVING APPEAL *(Last, First M.I.) (Please print)*

| SIGNATURE | DATE *(mm/dd/yyyy)* | TIME |
|---|---|---|
| | | |

Initial Distribution: White – Appeal Authority, Yellow - Coordinator, Pink - Inmate

Final Distribution: White – Master Record File, Yellow – Institutional Fie

803-2
6/7/14




Arizona Department of Corrections

# Result of Disciplinary Hearing

Rcvd 6/24/2020

| | | | | | |
|---|---|---|---|---|---|
| Name | WILLIAM BURKE | Location | KINGMAN, KINGMAN-HUACHUCA M63 BL5DD42L | ADC | 295954 |
| Date | 6/16/2020 6:10:00 PM | Case # | 20-KG1-000386 | Violation | 38B - Positive Test or Refusal of UA |

Hearing Officer Name: RIHARB, DEBRA L

Inmate Plea: Not guilty

Staff Assistant Assigned: No

Name of Staff Assistant Provided:

Findings of DHO: Guilty

Penalty Assessed for Felony Violation

| Penalty | Amount | Penalty to Run | Suspension | Case # |
|---|---|---|---|---|
| Earned Release Credits | 30 Credit(s) | N/A | N | 20-KG1-000386 |
| Loss of Privilege | 30 Days | Concurrent | N | 20-KG1-000386 |
| Loss of Visits | 90 Days | Concurrent | N | 20-KG1-000386 |
| Non-Contact | 270 Days | Concurrent | N | 20-KG1-000386 |
| Parole Class III | 90 Days | Consecutive | N | 20-KG1-000386 |

Specific Evidence Considered in Finding Of Guilt Which Meets the Established Standard of Proof. I am persuaded by the evidence that is more probably true than not that you committed the disciplinary violation based on the following:

Disciplinary Report, Investigative Reports, Inmate states he cannot go with others around

Additional Comments:

Disciplinary Hearing Officer Signature

Date

ARIZONA DEPARTMENT OF CORRECTIONS

Arizona Department of Corrections

**Result of Disciplinary Hearing**

6/22/2020 3:19:57 PM

I have received a copy of the decision of the Disciplinary Hearing Officer. I understand that I may appeal this decision within 5 (five) calendar days through the Disciplinary Appeal process.

Inmate Signature Date

6/22/2020 3:19:57 PM

Warden/Deputy Warden's Signature Date

Generated Date: 06/23/2020 09:55




Arizona Department of Corrections

KINGMAN - KINGMAN-HUACHUCA

Notice:

As of: 06/23/2020

Incentive phase criteria is reviewed each day. Information in the system since the previous day is used to determine if any changes have taken place that would change an inmate's incentive level. This letter provides information about the change and why.

Notice: 295954 BURKE WILLIAM

Bed: V, KINGMAN-HUACHUCA M63BL5DD42L

Effective today your phase level has been changed from Phase 3 to Phase 2

Attention Required! Due to failing to maintain one or more of your phase level requirements (see below) your phase level has been revised accordingly (see above). This may be a setback will affect your privileges but you are encouraged to rededicate yourself in order to move up to the next phase.

To advance your status you must: Participate in Programs, removal from a program for poor performance or behavior will result in a reduction to Phase 1. NOTE: Per D.O. 809.01.1.5.4: if you are removed from a program, you shall remain in Phase 1 for 1 year before becoming eligible to advance to Phase 2. Maintain a good discipline violation record, no major or minor violations for 6 straight months.

Reason(s)

☑ Found guilty of a major group B disciplinary violation

Inmate Name, Burke, William
ADC# 295954
CASE # [redacted]

* Kingman/Huachuca *

POINT I

DISCIPLINARY PROCEEDINGS

The Supreme Court held in Wolf v. McDonnell that prisoners who lose statutory good time in disciplinary proceedings are entitled to notice, a written statement of the evidence behind a decision and the reasons for the punishment imposed, a limited right to call witnesses and present documentary evidence at a hearing, and in certain cases the assistance of a counsel substitute. Even if the state rejects the idea that a "liberty" issue is present --- it cannot deny that the prisoner has been deprived "property". As a direct consequence, prisoner was fired from his kitchen job as a cook, whic earned him .45 per hour. Money is a tangible asset which can be converted to goods, henc it is "property". Further, continued write-ups for "failure to produce", (a documented medical condition / disability) would raise prisoner's classificati score, resulting in a transfer to a level 4 yard. The conditions there impose "atypical and significant hardship... in relation to the ordinar incidents of prison life." Sandin v. Conner, 515 U 472, 484, 115 S. Ct. 2293 (1995). Clearly, the threshold of "Wolf" has been satisfied.

POINT II

HEARINGS

The most basic due process right is the r to be heard. If the committee refuses even

listen to an inmate, they violate due process. See Mack v. Johnson, 430 F. Supp. 1139, 1145 (E.D. Pa. 1977) (Committee refused to let the prisoner explain why he denied the charges). This is exactly what occurred in this present case. Inmate had a prepared written defense and attempted to turn it over to the Captain (see attached). The Cpt. said "I don't want that!" followed by "I find you guilty." There was no opportunity for the inmate to present a defense. The inmate has SNO's (Special Needs Order) from medical for the last four years exempting him from UA's du to urine hesitency. Inmate has volunteered to take an "alternative" collection technique like a blood draw. Inmate does not use drug alcohol. He has no other infraction during hi six years of confinement. He is a model inmate and very respectful.

POINT III

WITNESSES

Prisoners have a right to call witnesses when do so is not "unduly hazardous to institutional safety correctional goals." see Edwards v. Balisok, 520 U.S. 641, 646-47, 117 S. Ct. 1584 (1997) (refusal to call any witnesses was "an obvious procedural defec In this present case, having medical staff testify would be the only means for the

Inmate to "prove" his version of events. This "live" appearance is important because it allows the accussed prisoner the option of questioning the witness to ensure that all relevent information is brought out. See, mahers v. State, 437 N.W. 2d at 568-69. The committee, who has never reviewed inmates medical file, is not likely to be able to do this effectively. Rules forbidding the calling of staff witnesses have been held unconstitutional. See Ramer v. Kerby; Dalton v. Hutto. Staff testimony will always be more credible to a prison hearing officer than prisoner testimony, and cases in which staff testimony supports the prisoner are the cases in which the prisoner is most likely to be innocent of the offense. To deprive prisoners of the benefit of such testimony amounts to abandoning any pretense that the hearing is intended to uncover the truth.

POINT IV

DOCUMENTARY EVIDENCE

Courts have held that the "Brady Rule", which requires the disclosure of materials exculpatory evidence in criminal prosecutions, also applies to prison disciplinary proceedings. Piggie v. Cotton, 344 F.3d at 678 (citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963)); Thompson v. Hawk, 978

F. Supp. 1421, 1124 (D. Kan. 1997). Inmates medical records clearly fall into the category of "exculpatory." Not to produce them is a violation of due process. Inmate is only allowed to view his medical records--- Not to copy them. They are in the possession and control of medical contractor The GEO Group, Inc. See, Young v. Lynch, 846 F.2d 960, 963 (4th Cir. 1988 (due process may require production of evidence "when it is the dispositive item of proof, it is critical to the inmate's defense, it is in the custody of prison officials, and it could be produced without impairing institutional concerns"). The inmates medical record was particularly important to determining guilt or innocence and should have been made available.

POINT V

ASSISTANCE WITH A DEFENSE

There is no constitutional right to assistance in the disciplinary process; however, if the issues are so complex that it is unlikely that the inmate can present his case adequately, assistance from a staff member or another inmate may b required by due process. See, Brown v. O'Keefe, 1 A.D.2d 915, 529 N.Y.S.2d 48 (N.Y. App. Div. 1988) (hol accusation of drug test use based on urinalysi was a "complex case" requiring assistance.

That is the exact charge of this present case! The State of Arizona has broadened an inmates protection. See, State v. Melendez, 172 Ariz. 68, 834 P.2d 154, 155 n.1 (Ariz. 1992) (noting that state regulations permitted representation by retained counsel, willing staff member, or by another prisoner). Inmate requested staff assistance per Department Order 803 Section 7.12.2, but was denied by the Capt. The federal court has held that staff assistance must be provided "in good faith and in the best interests of the inmate" and "should include gathering evidence, obtaining documents and relevant tapes, and interviewing witnesses. At a minimum, an assistant should perform the investigatory tasks which the inmate, were he able, could perform for himself." Eng v. Coughlin, 858 F.2d at 898.

POINT VI

IMPARTIAL DECISION-MAKER

Inmate is entitled to a hearing before an impartial fact-finder (Edwards v. Balisok, 520 U.S. 641, 647, 117 S. Ct. 1584 (1997) (stating that due process requirements "are not so lax as to let stand the decision of a biased hearing officer who dishonestly suppresses evidence of innocence) - - -
* that is, one whose mind is not already

made up and who can give ~~AN~~ inmate a fair hearing. (An impartial decisionmaker "does not prejudge the evidence and... cannot say... how he would assess evidence he has not yet seen". Patterson v. Coughlin, 905 F.2d 564, 570 (2d Cir. 1990 But this is precisely what happened when the Captain refused to accept or even view the inmates written defense or medical file.

POINT VII

STANDARDS OF PROOF

The burden of proof is applied at the initial, fact-finding stage of a proceeding. It is the amount of evidence that the fact-finding body (in this case, the Captain) must believe is present in order to convict. The standard of proof at a disciplinary hearing is the "preponderance of the evidence". LaFaso v. Patrissi, 633 A.2d at 699-700; accord, Carrillo v. Fabian, 701 N.W. 2d 763, 776-77 (Minn. 2005); see Brown v. Fauver, 819 F. 2d 395, 399 n.4 (3d Cir. 1987). The preponderance standard simply requires that for a fact-finder to convict someone, it must be convinced that he is more likely guilty than innocent. To use a lower standard of proof in prison disciplinary hearings is unfair because these proceedings are already so one-sided. For example, as in this case, a prisoner may be convicted on

nothing more than an officer's written report.

POINT VIII

WRITTEN DISPOSITION

If the inmate is found guilty, he is entitled to a "written statement by the factfinds as to the evidence relied on and the reasons' for the disciplinary action Morrissey v. Brewer, 408 U.S. 471, 489, 92 S.Ct. 2593 (1972). The court has said that the written statement must be reasonably specific and may not simply adopt the officer's report by stating, for example, "Inmate is guilty of misconduct as written." Scruggs v. Jordan, 485 F.3d 934, 941 (7th Cir. 2007) ("we have repeatedly upheld the sufficiency of written statements that indicate only what evidence was relied on andto make the decision, and why.") Specificity should be required in all statements of reasons because it will encourage fairer decisions, "[a] reasons requirement promotes thought by the decision-maker, focuses attention on the relevant point and further protects against arbitrary and capricious decisions grounded upon impermissible or erroneous considerations" Jackson v. Ward, 458 F. Supp. 546, 565 (W.D.N.Y. 1978). In prison, it is all to easy for factfinder simply to assume that officers are always telling the truth and that inmates are always lying, and to issue rubber-stamp decisions



On that basis without giving each case serious and individulized attention. Cleavinger v. Saxner, 474 U.S. 193, 204, 106 S.Ct. 496 (1985).

POINT IX

APPEAL

Even though due process does not require Prison authorities to provide administrative appeal of disciplinary convictions, ADOCRR does Provide for such under its policy. This added protection allows the prisoner to file a Claim in court after he has exhausted his administrative remedies. Since there is an appeal process, the official who handles the appeals is liable for failure to correct due process violations. Lewis v. Smith, 855 F.2d 736, 738 (11th Cir. 1988).

POINT X

FALSE CHARGES

False charges make a sham, and inmate agrees with the court that said: "However minimal may be the process due to prisoners before segregation, that process is insufficient when it has been contaminated by the introduction through state action of false inculpatory evidence. The introduction of fals evidence in itself violates the due process clause. The fact that prisoners are not entitled to th full panoply of procedural protections afforded trial when they are subject to internal

prison discipline does not deprive them of the fundamental right not to have state officials make purposely false statements about them". Morrison v. LeFevre, 592 F. Supp. 1052, 1073 (S.D.N.Y. 1984). For this case, it should be duely noted that prisoner never "REFUSED A UA". His medical condition/disability prevented such action. He subseqvently volunteered to take a blood draw to show compliance to substance abuse policy. Prison staff at GEO are generally privileged to make up disciplinery charges with impunity. All to often we see these charges upheld by the hearing officer in what can only be described as a "sham" or "fraud" proceeding.

POINT XI

PUNISHMENT

Punishments are held to be "cruel and unusual" if they are grossly disproportionate to the offense Pearson v. Ramos, 237 F.3d 881, 885 (7th Cir. 2001). In the present case on appeal, the punishment was so extreme as to be "completely irrational" and was also based on "unlawful considerations". Henerd v. Parke, Santiago v. Miles. This inmate has been recognized by a federal court as "disabled" and is afforded protection under the ADA and later the Amendments Act of 2008. He also



has had a medical SNO for the past 4 years detailing the issue of urine hesitency. In over 6 years of confinement at ADOCRR, inmate has received only two tickets; both for "failure to produce a urine specimen". Otherwise, inmate is a model prisoner and very respectful to staff and others. Because of these two tickets, inmate was fired from his kitchen job of 5 years (which paid .45 per hour--- the highest on the yard). He also lost 240 days of "good time", priviledges like phone, store, and T.V. etc.., a reduction in phase, an increase of classification score, (with the threat of being moved to a level 4 yard) and inclusion on the "targeted testing list. All this because of a medical disability that is protected by federal law? This conduct by the guard and upheld by the discipline committee cannot be allowed to stand.

CONCLUSION

The effects of the above cited facts, with supporting case law, must be cured. Wherefore, it is humbly requested that this appeal officer issue the following prayer for relief.

a) Restoration of good time for this present "offense" as well as in case # 19M630046.

b) Expungement of file, because there has been a "substantial" violation, meaning a violation of a procedural rule that "(1) directly protects the integrity of the adjudication of guilt or innocence, or (2) prevents the inmate from gaining access to evidence." Hrbek v. State, 478 N.W. 2d 617, 619 (Iowa 1991).

c) Reinstatement to previous job as a kitchen cook with achieved pay rate of .45 per hour, including back pay ~~to original~~ offense in case # 19M630046

d) an injunction to prevent/stop prison ~~officials from employing an unconstitutional~~ procedure as a matter of policy or practice. Inmates expired SNO should be renewed and honored by security staff. If a drug/alcohol screening is necessary, a blood draw should be utilized to achieve results.

e) provide "in-service" training on proper guidelines to collect specimen, i.e. hand-washing w/ soap and supplying inmate w/ gown for modesty, and other essential elements detailed in Department Order

Signed this 23rd Day of June 2020 on the Kingman Yard / Huachuca Unit.

*** * Medical Records available for review --- excluded per HIPAA reasons

Respectfully submitted

William C. Burke III

William Burke # 295954

ARIZONA DEPARTMENT OF CORRECTIONS

Duty/Special Needs Order - Inmate Health

Date Issued | Expiration Date

✔Check the Appropriate Category

Full Duty   Limited Duty   Non-Duty/No Work   Lay in/Confined to living quarters with bathroom privileges

ENSURE ALL LIMITATIONS ARE COMPATIBLE

**Inmate Limited Duty** *(✔ Check only those that apply)*

- No lifting, No pushing, No pulling, No running
- No lifting over ___ 10 ___ 20 ___ 50 ___ pounds
- No repetitive bending/twisting body part ___
- No repetitive motion to injured part Body Part ___
- No work reaching above the shoulder
- No operation of a motor vehicle
- No climbing ___ ladders ___ stairs
- No operation of machinery or power tools
- No off-complex work assignments
- Exposure to direct sunlight only with hat, sunscreen, long sleeve shirt, etc.
- No exposure to respiratory irritants *(e.g. chemicals, paints, grass cuttings, etc.)*

**Other Limitations of Daily Activity** *(✔ Check only those that apply)*

Yes = Inmate is able to   No = Inmate is unable to

| Yes | No | Activity |
|---|---|---|
| Yes | No | Meals in Living Quarters |
| Yes | No | |
| Yes | No | Field Activities ___ day(s)/week(s) |
| Yes | No | Walk Track |
| Yes | No | Sports Activities ___ day(s)/week(s) |
| Yes | No | Visitation |
| Yes | No | Other |

**Additional Considerations**

**Medical Property Issued**

**Medical Property to be Returned to Clinic by:**

**Work Capacity, Specify Limitations:** *(Circle either hours/day or consecutive hours)*

Workday Capacity

- Can sit ___ hours/day or consecutive hours
- Can stand ___ hours/day or consecutive hours
- Can walk ___ hours/day or consecutive hours

Other Limitations/Considerations *(Explain)*

**Restrictions**

| Code | Restriction |
|---|---|
| 001 | CORRID |
| 002 | L BUNK |
| 003 | TUCSN |
| 004 | FLO/EYM |
| 005 | NO STAIR |
| 006 | CLSE - DIN |
| 007 | CLSE - BTH |
| 008 | NO TENT |
| 009 | ADA SHWR |
| 010 | ADA PRTR |

Medical Score - Circle One 1 2 3 4

ADA ___ Yes or ___ No

Provider Signature/Date

Sanabia, J NP

Inmate Signature/Date

Distribution: White - Medical Record
Canary - Unit Chief of Security
Pink - Inmate

Inmate Name *(Last First M.I.)* | ADC Number

Date of Birth | Facility/Unit

1101-6D
12/19/12

TO: Disciplinary Board
FROM: Burke, William #295954
RE: Failure to Produce Urine Specimen



LEGAL ARGUMENT

Department Order 709 (1.3.4) is clear: Inmates will be charged with a rule violati when "They 'WILLFULLY' disobey a direct order from staff by refusing or failing to produc a urine specimen. The word "WILLFULLY' is defined by Webster's New World College Dictionary as "said or done deliberately or intentionally." The Supreme Court has provided tha the meaning of words are to be given the same meaning everyone else gives them and not "a private, esoteric meaning." Davis v. United Sta 328 U.S. 582, 600 (1946). See also Addison v. Holly Hill Fruit Products, Inc. 322 U.S. 607, 618 (1944) (Stating when something is not expresse in technical terms and is addressed to the common man it "is therefore to be understood according to the sense of the thing, as the ordinary man has the right to rely on ordinary words addressed to him.") The provision that words are to be given the ordinary meaning is universal across all leg subject matters and necessary to the order enforcement of the law. See State v. [illegible] 204 Ariz. 216 (AZ Ct. App. 2003) (Stating [illegible] for look to the plain language of the statut as the most reliable indicator of its mean Accordingly, when the Department listed

an element of the offense as "willfully disobey", it must show, by a preponderance of the evidence, that the inmate acted with 'mens rea' (a criminal state of mind). To meet this requirement, the officer must demonstrate, through a detailed explanation, of inmates behavioral cues - that a failure to produce a urine specimen was in fact "willful". The disciplinary report is devoid of such a narrative because those facts were not present. Instead, the inmate produced credible evidence to show the officer that the failure to produce result from an underlying medical condition and current prescription of terazosin hydrochloride, which has a common side effect of urine hesitency. Inmates extensive medical history dates back to his original confinement in 2016. In short, inmates urological issues forelose on the possibility of urinating on demand. For each of the past four years inmate has obtain a "SNO" from medical, which has released him from the obligation of UA's. Section 1.4.4.1 of D.O 709 reads, " Staff pursuing disciplinary action for the inmate's failure to produce a specimen shall verify that the inmate was on psychotropic medication

as a potential mitigating circumstance." In this present case the officer did not pursue that mandate. Standing alone, that negligence warrants dismissal of this instant charge. More importantly, for a security staff (who has no medical training, license or certificate) to view or otherwise "verify" an inmate's particular medical treatment or prescribed medication is a clear violation of 42 U.S.C. §§ 1320d et seq., commonly known as HIPAA. The inmate discovered this erroneus policy on 6/18/20 and has notified the Secretary of the Department of Health and Human Services via letter. Further the officer denied having ever received vendor training or reviewing the operational manual as called for in 709.03 Section 1.2. This would help explain his numerous errors; some being fatal. One such example is section 1.4.2 which directs the officer to give "NO MORE than an eight ounce glass of water." Yet the officer states giving 16 oz. of water in the narative. To an inmate with underlying health issues, specifically fluid retention, this overload can "shock" his system and have catostrophic consequences including global organ shut down resulting in death.



ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Letter

*Requests are limited to one page and one issue. NO ATTACHMENTS PERMITTED. Please print all information.*

| INMATE NAME (Last, First M.I.) (Please print) | ADC NUMBER | INSTITUTION/UNIT | DATE (mm/dd/yyyy) |
|---|---|---|---|
| Burke, William | 295954 | Kingman/Huachuca | 6/19/20 |

| To | Location |
|---|---|
| Ms. Fleming - C/o III ~~*ADA Liason~~ C/C Jeff Wriggley. | The GEO Group, Inc. 50 1/2 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

Department order 709, substance abuse, detection and control is flawed because it fails to consider the exceptional medical factors many inmates encounter. I have an extensive documented medical history related to urology and am currently prescribed medication which forcloses on my ability to "urinate on demand." I have been cited on two occassions for failing to produce a urine specimen. This has caused loss of good time/privileges, reduction of phase, and inclusion on the "Targeted Testing" list. This is fundamentally unfair. (Please read "Legal Argument" dated 6/21/20 to Disciplinary Board) Further, section 1.4.4.1 of D.O. 709 is a clear violation of 42 U.S.C. §§ 1320 d et seq (HIPAA) Please refer to complaint dated 6/19/20 to the Office of Civil Rights - Dept. of Health and Human Services for details. Moreover, many of the guidelines for urine collection are not being practiced on Huachuca, specifically relating to hygiene, e.g. hand washing w/ soap, inmate gloves/gown etc... These should be reviewed with staff, particularly during this COVID-19 pandemic. These issues are of increased interest for those of us who fall under the protection of 42 U.S.C. § 12101 et seq (ADA and its later Amendments Act) The 2008 Act included among others the "bladder" as a major bodily function. GEO is a "Public Entity" under Title II of the ADA. I appeal to its protection for relief. Please forward to appropriate responsible party for resolution on threat of a class-action lawsuit.

| INMATE SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|
| William C. Burke | 6/19/20 |

Have You Discussed This With Institution Staff? ☑ Yes ☐ No

If yes, give the staff member's name: Lt. Romero

Distribution: Original – Master File; Copy - Inmate

916-1 5/14/12

William Burke #295954
ASPC-KINGMAN/HUACHUCA UNIT
P.O. BOX 6639
KINGMAN, AZ 86402

U.S. Department of Justice
Civil Rights Division
"Dept. of Health / Human Services"
Special Litigation Section
950 Pennsylvania Ave, N.W
Washington, DC 20530

Dear Sir/Madam,

I am an Arizona inmate. Department Order 709 mandates that at least 10% of inmates on each unit be given a UA to test for substance abuse. I have been confined since 2015 and am a model inmate, e.g. Phase III with no write-ups. My crime did not involve drugs/alcohol. I am not on the "Targeted Testing" list. My name was randomly selected for a UA. Because of underlying health conditions, I am on medication that causes urine hesitency. As such, I was unable to produce a urine specimen. This resulted in a "major" ticket and obliged a prison guard to view my medical records for any possible "mitigating circumstance." The guard is untrained and unlicensed in the medical field. His medical training was strictly for [illegible] [illegible]. I did not authorize such a breach into my personal medical privacy as guarenteed

by HIPAA. Prison guards routinely gossip with other staff about inmates which eventually filter down to the prison population --- there are no "Secrets" in prison. I do not want my private medical information freely shared. It puts me at a greater risk of victimization and/or assault. I have included 709- Page 7 (Substance ABUSE, DETECTION AND CONTROL), Section 1.4.4.1, dated April 7, 2009, for your review. This policy is an obvious violation of 42 U.S.C. §§1320d et seq. (HIPAA). I pray that the D.O.J. will look into this matter and compel the Department of Corrections to adhere to this law regarding my fundamental right to privacy and safty. Your urgent response is requested. Signed this 19 Day of June 2020 in Kingman, AZ.

Respectfully submitted,

William C. Burke IV

William Burke, # 295954

accomedations" --- now I am left with nothing but pain and limited movement. I want to be evaluated individually and not with some "blanket policy" that is discriminatory. Another medical issue deals with my "bladder." The ADA Amendments Act of 2008 has broadened the definition of terms and now includes "bladder" as a "Major Bodily Function". My condition and medication cause urine hesitency. Each month, by policy, the prison is to drug test at least 10% of its population. I have explained my issue to medical and security. I have asked to be given an alternative collection technique, such as a blood draw. Instead, I have received two major "tickets" for "Refusal/Failure to produce". I want to comply with the rules but am not medically capable. I have lost over 90 days good time, Special privileges, ie TV, Store, visits etc, I have a permanent disciplinary file that will follow me to Probation, my phase has been reduced, and my classification score has increased. I am now on the "Targeted Testing" list. This seems like a punishment based on my disability. I do not use drugs/alcohol. I am willing to prove that with a blood test. Please help so that these "tickets" don't continue. Dated: 6/23/20

William C. Burke III

William Burke #295954

William Burke #295954
ASPC- Kingman
Huachuca Unit
P.O. Box 6639
Kingman, AZ 86402

Office of the Division Director for Support Services
Arizona Department of Corrections (RR)
1645 West Jefferson Street
Phoenix, Arizona 85007

Dear Sir/Madam,

I am an inmate at the privately run Huachuca Unit in Kingman, AZ. Prior to incarceration I was deemed disabled by a Federal Administrative Law Judge and awarded SSDI benefits. A major reason for my physical disability stems from a broken back over three decades ago. I walk with a cane and require pain management services like pain medication, heating pad/ "TENS" therapy as well as P.T. These therapies take the "edge" off and allow me to somewhat participate in the Activities of Daily Living. Recently the prison abruptly discontinued all of these products/services. Word is that some inmates might have been selling the Gamapentin --- but what about those of us who need it to function? The prison has not offered an alternative or substitute. Without my therapies it is difficult to even get out of bed or perform basic hygiene. These former services seemed to be "reasonable

ARIZONA DEPARTMENT OF CORRECTIONS

Inmate Informal Complaint Resolution

*Complaints are limited to one page and one issue. Please print all information.*

| INMATE NAME (Last, First M.I.) (Please print) | ADC NUMBER | INSTITUTION/UNIT | DATE (mm/dd/yyyy) |
|---|---|---|---|
| BURKE, WILLIAM | 295954 | KINGMAN/HUACHUCA | 6/22/20 |

| TO | LOCATION |
|---|---|
| Ms. Fleming - C/O III | The GEO GROUP, INC., 5042 |

State briefly but completely the problem on which you desire assistance. Provide as many details as possible.

There is erroneous and derogatory information on my institutional file which I demand to be expunged per Paine v. Baker, 595 F.2d 197, 201 (4th Cir. 1979); accord, Farinaro v. Coughlin, 642 F. Supp. 276, 281-82 (S.D.N.Y. 1986) and cases cited. The false information in my file has "collateral consequences" which meet the threshold of a "liberty interest" under Sandin v. Conner. The records on file show a clear constitutional violation and denial of due process. See Kerr v. Farrey; Spruytte v. Hoffner; Gaston v. Coughlin; Toolasprashad v. Bureau of Prisons, and others. Even though the law is well settled. DOC's routinely publish ~~incorrected~~ inmate files which can have devastating and far reaching consequences. For specific factual details please reference "Legal Argument" to Disciplinary Board, dated 6/21/20; Inmate letter to Warden Wrigsley dated 6/19/20; and complaint to the U.S. D.O.J/Civil Rights Division, "Dept. of Health and Human Services", Special Litigation Section dated 6/19/20. I have also appealed to the ADA monitor for protection under the ADA. Unless this critical issue is satisfactorly resolved, I am determined to initiate a class action under 42 U.S.C. § 1983. I appreciate your prompt response - exhibits attached.

| INMATE SIGNATURE | DATE (mm/dd/yyyy) |
|---|---|
| [signature] | 6/22/20 |

Have you discussed this with institution staff? ☑ Yes ☐ No

If yes, give the staff member name: LT. Romero

Distribution: INITIAL: White and Canary - Inmate
FINAL: White – Inmate; Canary – Grievance Coordinator File

802-11
6/25/14

# ARIZONA DEPARTMENT OF CORRECTIONS

## Inmate Disciplinary Report



*Please PRINT or TYPE all information*

*Date example: (mm/dd/yyyy)*

SD#2

**Case Number** 20K91000386

| INMATE NAME *(Last, First M.I.) (Please print)* | ADC NUMBER | INSTITUTION/UNIT |
|---|---|---|
| Burke William | 295954 | KCRF /Huachuca |

CHARGE: GROUP NUMBER AND TITLE

38B - Positive Test or Refusal of UA

**I. Statement of Violation** *(State fully the facts and circumstances of the violation including the means by which the inmate was advised of the charge(s)).*

On 06/16/2020 at approximately 1610 hours, Inmate Burke, William ADC# 295954 was verbally notified that he had two hours to produce a urine sample for drug testing. At approximately 1810 hours, after being afforded one 16 oz. cup of water, Inmate Burke, William ADC# 295954 refused to produce a urine sample for drug testing. On 06/16/2020 at approximately 1810 hours, Inmate Burke, William ADC#295954 was verbally placed on report by myself, Officer Piekarski, C. for the charge of 38B: Positive Test or Refusal of UA. This report was written by Officer Piekarski, C. on 06/16/2020 at approximately 1830 hours. End of report.

| DATE/TIME OF VIOLATION | REPORTING STAFF NAME *(Last, First M.I.) (Please print)* | SID NUMBER |
|---|---|---|
| 06/16/2020 / 1810 | Officer Piekarski | PC06 |

| SIGNATURE | DATE/TIME COMPLETED |
|---|---|
| [signature] | 06/16/2020 / 1830 |

| DISPOSITION | DATE/TIME REVIEWED |
|---|---|
| Refer to DHO | 06/16/2020 1900 |

| SHIFT SUPERVISOR REVIEW BY *(Last, First M.I.) (Please print)* | SIGNATURE | DATE |
|---|---|---|
| Lieutenant Gentry M. | [signature] | 06/16/2020 |

**II. Delivery of Charge:** I hereby certify that on 6/17/2020 at 1307 hours, I have served notice on this inmate for a hearing on the charge before the Disciplinary Hearing Officer as a Felony Violation. The inmate has received a copy of the disciplinary charge. The hearing is scheduled on or after 48 hours from delivery of charge.

Inmate was offered staff assistance and it was:

☐ Accepted ☒ Declined

| INMATE SIGNATURE | DATE | DELIVERING OFFICER SIGNATURE | DATE |
|---|---|---|---|
| William C. Burke IV | 6/17/2020 | [signature] | 6/17/2020 |

**III. Report of Investigation**

FELONY VIOLATIONS ONLY – SEE ATTACHED *(Use form #803-8)*

| INVESTIGATING OFFICER *(Last, First M.I.) (Please print)* | SIGNATURE | DATE INVESTIGATION COMPLETED |
|---|---|---|
| [signature] | [signature] | 6/17/2020 |

**IV. Disposition:** This case was handled as:

☒ Felony Violation: Refer to Disciplinary Hearing Officer

☐ Informal Resolution ☐ Dismissed/Not Guilty

☐ Misdemeanor Violation: Reason for finding of guilt:

Penalty Assessed For A Minor Violation

☐ _____ Hours Extra Duty ☐ Reprimand Other

☐ Return/Forfeit Contraband Items

☐ _____ Days Loss of Privilege

*For Misdemeanor Violations Only: Inmate was given a copy of the results and advised that effective date, he/she has five calendar days to appeal.*

| INMATE SIGNATURE | | DATE/TIME |
|---|---|---|
| | | / |

| COORDINATOR'S NAME *(Last, First M.I.) (Please print)* | SIGNATURE | DATE/TIME |
|---|---|---|
| | | / |

Distribution: Coordinator to make two copies of form; Original to Master Record, File Copy to Institutional File, Copy to Inmate

1.3.2 When urinalysis/blood tests are conducted at a contract or hospital site for an inmate who is suspected of substance abuse, those test results shall be forwarded to the applicable institution to be used as administrative evidence in the inmate disciplinary process.

1.3.3 The Community Supervision Technical Manual may establish procedures for obtaining a urine specimen that reflect physical location and/or physical plant issues or other situations unique to community supervision involving the taking of a specimen, e.g., size of the bathroom or availability of hand washing supplies.

1.4 Inmate/Offender Inability or Refusal to Produce a Specimen

1.4.1 Any inmate or offender who refuses to provide a urine specimen shall be subject to disciplinary action.

1.4.1.1 An inmate's refusal to give a specimen shall be considered refusal to obey a direct order, but shall not be considered an admission of guilt.

1.4.1.2 A refusal by an offender shall be considered a violation of conditions of supervision and may be considered an admission of guilt.

1.4.2 Inmates who claim to be unable to produce a specimen may be given no more than an eight ounce glass of water and shall remain under staff observation for two hours in an area where they cannot drink water or other liquids to dilute the urine.

1.4.2.1 If, at the end of two hours, the inmate still claims the inability to urinate, the inmate shall be charged with refusing to submit to urinalysis testing as outlined in Department Order #803, Inmate Discipline System.

1.4.3 If an offender claims to be unable to produce a specimen, Parole Officers shall follow procedures established by the Community Corrections Technical Manual. These procedures may decrease time limits, based on the staff member's judgment, but shall not exceed the two-hour time limit.

1.4.3.1 Offenders shall not be charged with disobeying a direct order, but shall be charged with a violation of conditions of supervision.

1.4.4 Certain psychotropic medications interfere with an individual's ability to urinate. If an inmate or offender has indicated that he or she is taking a medication that the staff member believes may be a psychotropic, the procedure outlined above shall be followed. At the end of the two-hour period, the inmate shall be instructed to produce whatever urine he or she can, even if it is less than the required one to two ounces. If the inmate is still unable to produce any urine, the staff member shall document the incident on the Request for Inmate Substance Screen.

1.4.4.1 Staff pursuing disciplinary action for the inmate's failure to produce a specimen shall verify that the inmate was on psychotropic medication as a potential mitigating circumstance.

**709.03 INMATE URINE TESTING GUIDELINES**

1.1 Urine tests shall be performed according to protocol established by the vendor providing the Rapid-Tox cups.

7.8.6.3 If the inmate pleads not guilty, evidence shall be presented, including appropriate staff or inmate testimony or written statements. The inmate may make a closing statement concerning the misconduct for the Disciplinary Hearing Officer to consider.

7.9 The Disciplinary Hearing Officer shall determine whether to call staff or inmate witnesses to appear at the proceedings or whether written witness statements are adequate or necessary.

7.9.1 The inmate shall present to the Disciplinary Coordinator, in writing, all proposed questions for each witness he/she wishes to call.

7.9.2 Live testimony of inmate witnesses is not required. If live testimony is permitted, the Disciplinary Hearing Officer shall not permit the inmate to directly question the witness. The Disciplinary Hearing Officer shall conduct the questioning if he/she determines the questions are appropriate and relevant. The questions the inmate wishes to ask shall be submitted by the Disciplinary Coordinator in writing to the Disciplinary Hearing Officer for review.

7.9.3 When an inmate is at another facility, a written statement may be taken. Statements taken from inmates at another facility or who are not present at the hearing shall be made known to the inmate (unless confidential as defined in section 4.0 of this Department Order), at least 48 hours prior to the hearing, so he/she may respond on the record.

7.9.4 The Disciplinary Hearing Officer shall retain in the disciplinary packet the questions, which were determined as neither appropriate nor relevant.

7.9.5 The Disciplinary Hearing Officer may determine not to call a witness if the witness would be subject to a risk of reprisal, undermine authority or otherwise present a threat to the security or order of the institution, or, if the Disciplinary Hearing Officer reasonably believes the witness' testimony would be irrelevant, immaterial or repetitive. The Disciplinary Hearing Officer shall document the reason for the exclusion of any witness.

7.9.6 Although there is no maximum number of witnesses an inmate may call, the Disciplinary Hearing Officer may limit the number based on a reasonable belief the witness testimony would be repetitive testimony, irrelevant or an undue hazard to institutional safety.

7.9.7 Character witness evidence is not relevant in a disciplinary hearing and shall not be permitted.

7.9.8 The Disciplinary Hearing Officer may elect to call the charging officer as a witness to clarify any portions of the Inmate Disciplinary Report form.

7.9.9 The Disciplinary Hearing Officer may remove witnesses whose conduct interferes with the hearing.

7.10 All evidence used at the hearing shall be made known to the inmate, except the Disciplinary Hearing Officer may decide to withhold from disclosure specific information if the disclosure would endanger the safety or well-being of another person. The Disciplinary Hearing Officer shall note in the decision the reasons for excluding or limiting any evidence.



7.11 Persons other than the Disciplinary Hearing Officer, inmates and staff involved in the disciplinary matter may be present in the hearing room and observe discipline hearings. Their attendance shall be approved in advance by the Warden, Deputy Warden, Bureau Administrator or Administrator, and shall be noted on the record. These persons may be excluded if they are disruptive.

7.12 During the course of the Hearing, the Disciplinary Hearing Officer may:

7.12.1 Offer staff assistance to the inmate during the hearing and use available personnel resources, such as medical staff, or mental health staff as consultants.

7.12.2 Postpone a hearing for good cause. The reasons for postponement shall be included in the file. The Warden, Deputy Warden, Bureau Administrator or Administrator shall determine whether or not to approve a postponement. Postponements shall not exceed 28 calendar days.

7.12.3 Postpone the hearing and return the Disciplinary File to the Disciplinary Coordinator if the titled charge needs to be modified to a different charge with different elements than the current rule violation.

7.12.3.1 The Disciplinary Hearing Officer may modify the charge during the hearing and change the titled charge to a greater class charge; however, the inmate shall be notified he/she may request an additional 48 hours to prepare a defense on the modified charge. The inmate may waive this requirement.

7.12.3.2 During the course of the hearing, the Disciplinary Hearing Officer may change the titled charge to a lesser or equivalent charge without ordering a re-hearing. The lesser or equivalent charge shall have one or more of the elements of the titled charge.

7.12.4 Postpone the hearing to request other supporting documents.

7.13 The inmate charged shall be present at the disciplinary hearing unless substantial reasons exist which require his/her exclusion from the hearing.

7.13.1 If the inmate waives the right to be present or refuses to be present, the inmate shall sign the Inmate Discipline - Hearing Waiver, Form 803-4, and an employee shall witness the signature. If the inmate refuses or is unable to sign the waiver, the employee shall specifically note this on the form.

7.13.2 If the inmate's conduct disrupts the hearing, the inmate shall be removed from the area or hearing room and the hearing shall be conducted without the inmate present. The reason for the inmate's absence shall be explained on the Result of Disciplinary Hearing form.

7.13.3 The Disciplinary Hearing Officer shall ensure the inmate has the opportunity to provide a statement. The statement may be verbal, written or both.